IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:17-cr-74-5 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING DEFENDANT'S** |
| SAMUEL WASHINGTON, | : | **MOTION FOR COMPASSIONATE** |
| | : | **RELEASE** |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant's Motion for Compassionate Release (Doc. 295). The United States opposes Defendant's motion. (Doc. 302). For the reasons set forth below, Defendant's motion will be **DENIED**.

### I.  BACKGROUND

This matter stems from a state and federal investigation into an alleged criminal street gang called "Blood Brothaz." (Presentence Report ("PSR") at ¶ 32.) Washington and his co-defendants, all members of Blood Brothaz, created a rap music label called "FDD" to act as a cover for drug sales and to legitimize drug proceeds. (PSR at ¶ 34.)

On February 21, 2019, Defendant Samuel Washington entered into a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. 182.) As part of the plea agreement, Washington admitted participation in a years-long conspiracy to deal in marijuana, heroin, fentanyl, and methamphetamine. (Doc. 182 at PageID 692.) Indeed, a search of Washington's residence produced approximately $1,500 in drug proceeds as well as methamphetamine, marijuana, a heroin/fentanyl mixture, and two handguns. (*Id.*) In exchange for an agreed sentence of 60 months of incarceration followed by a court-determined period of supervised release, Washington pled guilty to one count of possession of a firearm during and in

relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. 182 at PageID 687–89.) Pursuant to United States Sentencing Guideline ("USSG") § 2K2.4(b), the guideline sentence is a mandatory minimum of 60 months to a maximum of life imprisonment. On August 7, 2019, the Court sentenced Washington to the agreed mandatory minimum sentence of 60 months followed by three years of supervised release. (Doc. 232.)

Washington has been incarcerated since his arrest in June 2017. He is currently housed at FMC Lexington, a federal medical center operated by the Bureau of Prisons. His projected release date is June 23, 2021.

Washington now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 295.) He alleges that he suffers from high blood pressure which puts him at high risk to suffer serious illness from COVID-19 and that he has been a model inmate with no incidents of disciplinary infractions. He offers no evidence in support of either contention.

## II. LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). "The compassionate release provisions were first included in the Sentencing Reform Act of 1984 . . . to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). The 1984 provisions empowered only the Director of the Bureau of Prisons ("BOP") to file a motion for compassionate release, "[y]et the Director seldom wielded this significant power." *United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, *3 (6th Cir.

Nov. 20, 2020). For instance, the BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017. *Id.* (referring to Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP)).

Frustrated that the Director acted so infrequently, Congress passed the First Step Act of 2018. "Section 603(b) of the First Step Act—titled 'Increasing the Use and Transparency of Compassionate Release'—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A)." *Id.* at ___, 2020 WL 6817488, at *4; *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Pursuant to § 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, under the current provisions, an incarcerated person can file for compassionate release after either exhausting the BOP's administrative process or thirty days after the warden received the compassionate release request, whichever is earlier. *Id.* Once this administrative process has occurred, the Court employs a three step evaluation to determine: (1) whether

"extraordinary and compelling reasons warrant" the requested sentence reduction; (2) whether the reduction is consistent with applicable Sentencing Commission policy statements; and (3) whether, considering the applicable section 3553(a) factors,[1] the reduction is warranted under the particular circumstances of the case. *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *6 (footnote added); 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement [USSG] § 1B1.13." *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *9 (concluding that § 1B1.13 applies only where the BOP Director files the compassionate release motion). A court's decision to grant compassionate release is discretionary. *Id*. at *5. A person seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Ebbers*, 432 F. Supp. 3d. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).

### III.     ANALYSIS

In the case at bar, Washington failed to offer evidence that he exhausted the required administrative remedies by petitioning the warden for compassionate release at least thirty days prior to filing his motion. The United States does not raise lack of exhaustion in opposing Washington's Motion. In addition, in its response brief, the United States refers to "the BOP's denial of [Washington's] request for release" on the basis that "there is nothing about his medical conditions that they are not equipped to handle." (Doc. 302 at PageID 1368.) Thus, for purposes

---

[1] Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and promote respect for the law; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care or other treatment; (5) the kinds of sentences available; (6) the sentencing guideline range; (7) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct; and (8) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a).

of this motion, the Court will accept that Washington did, in fact, exhaust administrative remedies prior to filing.

  The Court, then, must determine whether an extraordinary and compelling reason warrants sentence reduction here. The COVID-19 pandemic continues to rage both inside and outside of correctional facilities. "During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Provost,* No. 3:18-cr-42, ___F. Supp. 3d___, 2020 WL 4274570, at *4 (E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release). For instance, in July, this Court granted compassionate release to an inmate with diabetes and high blood pressure where the correctional facility failed to implement adequate sanitation measures, did not require masks, and fired the only onsite physician. *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020). *See also United States v. Smith,* No. 4:15-cr-019, 2020 WL 3317222, at *4–5 (N.D. Ohio June 18, 2020) (finding defendant's age, history of heart disease, kidney disease, and diabetes constituted risk factors demonstrating extraordinary and compelling reasons for release but denying motion on other grounds); *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (COVID-19 pandemic and defendant's type two diabetes, asthma, sleep apnea, and obesity constituted an extraordinary and compelling reason for sentence reduction); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D. N.Y. April 3, 2020) (defendant's age, diabetes, hypertension, and obesity satisfied the extraordinary and compelling reason requirement); *United States v. Perez*, 451 F. Supp. 3d 288, 293–94 (S.D.N.Y. April 1, 2020) (defendant's recent surgeries and pain and vision complications, along with his

inability to care for himself in prison where social distancing in his small cell was impossible, constituted extraordinary and compelling reasons for release).

In the case at bar, however, Washington has failed to establish the particularized susceptibility required to establish an "extraordinary and compelling" reason for early release due to COVID-19. Accepting as true the unsupported assertion that he suffers from high blood pressure, Washington is young (age 33) and apparently healthy otherwise. The Probation Department's 2019 PSR identifies as his only medical concern, a potential need for eyeglasses. In addition, he is currently housed at a medical facility. Thus, if he were to contract COVID-19, medical care is accessible to him, if required.

Even if Washington's high blood pressure constituted an extraordinary and compelling reason, application of the relevant § 3553(a) factors counsels against a sentence reduction in this case. These factors were fully considered at the original sentencing hearing, and the Court finds no basis to disturb its prior findings now.

First, the nature and circumstances of this offense are quite serious. Washington participated in a years-long narcotics conspiracy that spanned multiple states, involved several residences, and included creation of a music label that promoted concerts as a way to distribute drugs and conceal drug proceeds. (PSR ¶¶ 34–45.) Second, as to Washington's history and characteristics, he has a history of low level drug offenses, and he has never maintained legal employment. (PSR ¶¶ 86, 95.) On the other hand, he appears to be an involved, loving father to his young son, and he successfully completed high school. (PSR ¶ 81.) The Court sincerely hopes that his current incarceration will encourage Washington to obtain vocational or other job training so he can protect his son from his involvement with drugs and the drug trade.

As noted above, the offense at issue is serious. Both the guideline sentence range and the statutory range are 60 months to life in prison. The Court sentenced Washington to the statutory minimum. With one exception, his co-defendants were sentenced to terms of incarceration ranging from 60 months to 120 months. To reduce Washington's term at this juncture would introduce unwarranted sentence disparities among similarly situated co-defendants and reduce respect for the law.

Finally, the Court is concerned about protecting the public from further crimes of the Defendant. Washington pled guilty to possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). Washington's co-defendants are also his relatives. It will be difficult for him to avoid their influence in his life and establish himself as a law-abiding citizen. With no history of legal employment, the Court is concerned that he may return to a life that includes drugs and weapons. There is no evidence that Washington's blood pressure concern would prevent him from engaging in similar dangerous criminal conduct if released now.

### IV. CONCLUSION

After considering the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is not warranted in this case. Accordingly, Defendant's Motion for Compassionate Release (Doc. 295) is **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

7